# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THOMAS ECCLESTON
       v.

THE CITY OF WATERBURY and
NEIL O'LEARY

No. 3:19-cv-1614 (SRU)

## RULING AND ORDER ON MOTION TO DISMISS

Thomas Eccleston brings this suit against his former employer, the City of Waterbury and Waterbury mayor Neil O'Leary, alleging discrimination on the basis of disability in violation of federal and state law. Specifically, Eccleston brings claims under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 et seq.), the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. §§ 46a-60(b)(1), (4)), the Connecticut Palliative Use of Marijuana Act (Conn. Gen. Stat. § 21a-408p(b)(3)) and additionally alleges common law defamation. For the following reasons, the motion to dismiss is **granted** with regard to the claims under the ADA. I decline to exercise supplemental jurisdiction over the state-law claims.

## I.       Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). A court considering a motion under Rule 12(b)(6) must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53

(2d Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations…a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do. *Twombly*, 550 U.S. at 555 (internal citations omitted). Rather,

[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Although a plaintiff bears the burden of establishing plausibility at the pleading stage, the

standard is "not akin to a probability requirement." *Iqbal*, 556 U.S. at 678. Instead, the well-

pleaded facts must "permit the court to infer more than the mere possibility of misconduct" in

order to establish a right to relief. *Id.* at 679.

A court deciding a motion brought under Rule 12(b)(6) is limited to considering facts

alleged in the complaint, and generally may not consider evidence outside the complaint. "When

matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must

either exclude the additional material and decide the motion on the complaint alone or convert

the motion to one for summary judgment." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000)

(internal citations omitted). Under established precedent in this circuit, a court may additionally

consider "documents attached to the complaint as an exhibit or incorporated in it by reference",

"matters of which judicial notice may be taken", and "documents either in plaintiffs' possession

or of which plaintiffs had knowledge and relied on in bringing suit" without converting the

motion to one for summary judgment. *Brass v. Am. Film Techs.*, *Inc.*, 987 F.2d 142, 150 (2d Cir.

1993). A court may additionally consider "documents used by [a] defendant" so long as a

plaintiff has "actual notice of all the information in the movant's papers and has relied on upon

those documents in framing the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d

42, 48 (2d Cir. 1991); *see also Reyes v. Suffolk*, 995 F. Supp. 2d 215, 220 (E.D.N.Y. 2014)

(internal citations omitted) (considering defendant's exhibits where "record was available to and

clearly known by all parties to this action").

The defendants in this case have attached five exhibits to the motion to dismiss,

including: (A) a copy of a Last Chance Agreement signed by Eccleston, O'Leary and the

president of Eccleston's union (Local 1339, AFL-CIO); (B) a copy of the collective bargaining

agreement between the City of Waterbury and the Local 1339, IAFF AFL-CIO; (C) the

Waterbury Human Resource Department Investigation Report, Eccleston's lab results, a copy of

the Waterbury Fire Department Standard Operating Procedures for substance abuse testing for

employees and a copy of letter informing Eccleston that he had been placed on administrative

leave; (D) a copy of a letter informing Eccleston that his employment had been terminated; and

(E) a copy of an article published in the Waterbury American Republic detailing Eccleston's

positive drug test and termination. *See* Def's Exhibits A-E, Doc. No.'s 15-2—15-6. Eccleston

attaches three exhibits to his memorandum in opposition to the motion to dismiss, including: (1)

a letter from a doctor consulted in advance of litigation specifying the proper procedure for a

positive drug test for a registered medical marijuana user; (2) a Certification of Fitness for Duty

signed by a physician on March 30, 2018 and; (3) a list of unreported decisions for my

consideration. *See* Pl.'s Exhibits Doc. No. 20-2—20-4.

I will consider the defendant's exhibits, because each of those documents is specifically

referenced or referred to in the complaint and is integral to the stated claims. I will additionally

consider the Certification of Fitness for Duty because that document is also referenced and relied

upon in the complaint. I will not consider the letter from a physician specifying the proper

procedure for drug testing a registered medical marijuana user, because that document appears to

be offered as evidence of a claim asserted in the complaint. *See, e.g., Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985) ("[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient").

## II.    Background

Eccleston was originally hired as a firefighter by the City of Waterbury in June of 1995, and by April of 2015 had achieved the rank of captain. Compl. at ¶¶ 3, 8. In November 2015, following an allegation of misconduct outside the workplace, he signed a "Last Chance Agreement" ("LCA") and accepted a demotion to the rank of lieutenant. *Id.* at ¶ 9. The agreement specified that in lieu of termination for the alleged misconduct, he would be placed on probation, would be subject to mandatory random drug testing and could be subject to termination if he tested positive for "a controlled substance." *See* Def.'s Ex. A Doc. No. 15-2 at 2.

In 2017, Eccleston was diagnosed with Post Traumatic Stress Disorder ("PTSD") stemming from experiences he suffered during his lengthy career as a firefighter. Compl. at ¶¶ 11-12, 15. On February 16, 2017, while speaking at a public hearing on public safety and security, O'Leary allegedly made discriminatory comments expressing disdain for individuals with PTSD and suggesting that that they should not be employed as first responders. *Id.* at ¶ 14.

At some point after he was diagnosed with PTSD, Eccleston spoke to his battalion chief, Chief Perugini and told him he was considering applying for a Connecticut Registration Certificate for medical marijuana. *Id.* at ¶ 11. Eccleston sought to use the medical marijuana for treatment of his PTSD. *Id.* In response to his suggestion that he might look into getting a Certificate, Eccleston was told by firefighting personnel that it "would not be a good idea." *Id.* at

¶ 12. Despite that reaction, Eccleston obtained a Connecticut Registration Certificate for medical marijuana on January 31, 2018. *Id.* at ¶ 15.

In March of 2018, Eccleston was selected for random drug testing as part of the collective bargaining agreement between Waterbury and his union. *Id.* at ¶ 16. A drug test was performed on March 20, 2018. *Id.* On March 26, 2018 a Waterbury Medical Review Officer contacted Eccleston and informed him that his drug test reflected a positive result for the presence of marijuana. *Id.* at ¶ 17. Eccleston explained that he was a registered user of medical marijuana and had obtained a valid registration card from the state of Connecticut. *Id.* Despite that explanation, the positive result was reported to the Waterbury. *Id.* at ¶ 18. Eccleston maintains that because he had a valid registration certificate for medical marijuana, the proper procedure was for the result to have been reported as a negative test (or a negative test with the suggestion that Eccleston obtain a fitness for duty evaluation). *Id.* at ¶ 18.

Because of the positive drug screen, Eccleston was ordered to report to the Waterbury Human Resources Department. *Id.* at ¶ 19. On March 28, 2018 Eccleston met with Director of Human Resources, Scott Morgan, and provided Morgan with his valid registration certificate for medical marijuana use. *Id.* He was advised by the Chief of Waterbury Fire Department to obtain a "fitness for duty" evaluation from a doctor; in the interim, Eccleston was told he would be placed on light-duty status. *Id.* at ¶ 20. Later that same day, however, Eccleston was hand-delivered a letter informing him that instead of being placed on light-duty status, he would be placed on unpaid administrative leave pending an investigation. *Id.* Eccleston contends that Mayor O'Leary ordered the change in status. *Id.*

Eccleston sought and obtained an evaluation from a physician on March 30, 2018 confirming his fitness for duty with no restrictions. *Id.* at ¶ 21. On April 5, 2018, the Waterbury

Human Resources Department held an investigatory hearing regarding the drug screen. *Id.* at ¶ 22. At the hearing, Eccleston was asked to confirm that he had tested positive for marijuana. *Id.*

On April 23, 2018 he received a letter from Waterbury informing him of his termination, citing to his "use of marijuana such that it has endangered the health and wellbeing of others" as grounds for termination. *Id.* at ¶ 23.

Following his termination, Eccleston filed charges with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC) alleging violations of the ADA and parallel state law. *Id.* at ¶ 7. He received "Releases of Jurisdiction" from both agencies. *Id.*

On October 15, 2019, Eccleston filed a complaint against Waterbury and O'Leary, alleging discriminatory discharge, failure to provide reasonable accommodations as required by the ADA, and retaliation in violation of the ADA. He additionally brought claims under the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. § 46a-60(b)(1), (4)) and the Connecticut Palliative Use of Marijuana Act (Con. Gen. Stat. §§ 21a-408, 408p(b)(3). Finally, he alleged that the city and mayor had made defamatory statements about him to the Waterbury Republican American local newspaper. *Id.* He seeks monetary damages, punitive damages and attorneys' fees.

Waterbury has moved to dismiss the complaint in its entirety.

## III.  Discussion

### A.  ADA Claims

Eccleston alleges that Waterbury discriminated against him on the basis of disability in violation of the ADA by: (1) discharging him following a positive drug test despite his valid medical marijuana registration certificate; (2) terminating his employment in retaliation for his

choice to obtain a medical marijuana registration certificate, and; (3) failing to provide him a reasonable accommodation for positive drug tests in light of his medical marijuana certificate. Waterbury moves for dismissal of all three claims. I address Waterbury's arguments in turn.

### 1. Discriminatory Discharge

Section 12112 of the ADA provides: "[n]o covered entity shall discriminate against a qualified individual on the basis of a disability in regard to…discharge of employees…and other terms, conditions and privileges of employment." 42 U.S.C. § 12112.  To state a claim for discriminatory discharge in violation of the ADA, a plaintiff must allege that: (1) the defendant is an entity covered by the ADA; (2) the plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) the plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the plaintiff was terminated because of disability (or perceived disability). *Capobianco v. New York*, 422 F.3d 47, 56 (2d Cir. 2005). The requirements for establishing a *prima facie* case are not onerous; at the pleading stage, a plaintiff need only set forth sufficient facts to "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Claims under the ADA are analyzed under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Accordingly, if a plaintiff alleges sufficient facts to support a *prima facie* case of discrimination, the burden shifts to a defendant employer to articulate a "legitimate non-discriminatory reason" for the termination. *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). If a defendant employer meets that burden, "the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is pretext" for unlawful discrimination. *Id.* In

establishing pretext, a plaintiff may rely on evidence "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non [discriminatory] reasons for its action". *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013). A plaintiff ultimately bears the burden of establishing not only that discrimination played a role in the adverse employment action, but that it was "the but-for cause of any adverse employment action." *Natofsky v. New York*, 921 F.3d 337, 350 (2d Cir. 2019).

In the case at bar, Eccleston alleges that he was a qualified individual who was disabled within the meaning of the ADA because he had been diagnosed with PTSD. *See* Compl. at ¶ 27(b). He contends that he was terminated on the basis of that disability because he was dismissed "following his presentment of a marijuana card" and because the "City of Waterbury used its knowledge of Eccleston's disability as it had his Registration Certificate…at the time of his termination." Pl.'s Mem. Doc. No. 20-1 at 6; *id.* at ¶ 27(c), He additionally points to comments made by O'Leary as evidence of discriminatory intent. *Id.* at ¶ 14; Pl.'s Mem. Doc. No. 20-1 at 5.

Waterbury moves for dismissal, arguing that Eccleston is not a qualified individual within the meaning of the ADA because he has acknowledged that he uses medical marijuana and therefore is precluded from claiming "the protections afforded to qualified individuals with a disability under the ADA." Def.'s Mem. Doc. No. 15-1 at 14. Accordingly, Waterbury argues that Eccleston cannot establish a *prima facie* case of discrimination under the ADA. In the alternative, Waterbury contends that even if Eccleston can establish a *prima facie* case, he cannot establish that the proffered reason for his discharge was pretext for discrimination. *Id.* at 15.

    i.    Qualified Individual

Section 12112 of the ADA prohibits employers from discriminating on the basis of disability against a "qualified individual," defined in section 12111 "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. §§ 12111-12. Section 12114 specifies, however, that "a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114. The ADA defines illegal drug use by reference to the Controlled Substances Act (CSA), which classifies marijuana as a Schedule I illegal substance based on its "high potential for abuse" and lack of "currently accepted medical use in treatment." 42 U.S.C. § 12111(6); 21 U.S.C. § 812(b)(1)(a)-(c). The ADA additionally provides, however, that the term "illegal use of drugs…does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act." 42 U.S.C. § 12111(6).

The extent to which that exception for supervised use of a drug may apply to state-authorized medical marijuana use is somewhat of an unsettled area of law. Over the course of the past two decades, state legislatures around the country have moved toward the legalization and regulation of marijuana for medical purposes. *See* NATIONAL CONFERENCE OF STATE LEGISLATURES, STATE MEDICAL MARIJUANA LAWS *available at* https://www.ncsl.org/research/health/state-medical-marijuana-laws.aspx (Jan. 11, 2021) (noting that 36 states and territories have approved some type of medical marijuana program). Many of those regulatory schemes, Connecticut among them, require a licensed medical professional to certify that an individual has a medical condition that qualifies for medical marijuana use. *See* CONNECTICUT STATE DEPARTMENT OF CONSUMER PROTECTION, *Medical Marijuana Program: Patient Registration Process*, *available at* https://portal.ct.gov/DCP/Medical-Marijuana-

Program/Patient-Registration-Process. Although Connecticut has enacted laws prohibiting

discrimination on the basis of authorized use of marijuana, it is somewhat unclear whether a

state-authorized medical marijuana user may claim protections under the ADA against

discrimination on the basis of medical marijuana use where that use is related to a disability and

supervised by a physician. Although the ADA provides a clear exception for drug use under the

supervision of a physician, federal law still explicitly prohibits the use, possession and

distribution of marijuana, even for medical purposes. *See* 21 U.S.C. § 801 et seq.

The Second Circuit has yet to directly address the supervised use exception in the context

of medical marijuana. In *Noffsinger v. SSC Niantic Operating Co. LLC*, 273 F. Supp. 3d 326,

338 (D. Conn. 2017), however, this court considered whether the ADA preempts Connecticut

law prohibiting employers from discriminating on the basis of medical marijuana use. Although

the *Noffsinger* court concluded that the ADA does not preempt state laws protecting employees

from discrimination on the basis of medical marijuana use (and therefore that states are free to

provide those protections), the court suggested in dicta that the ADA itself cannot be interpreted

to provide protection against that same discrimination. *Id.*

Similarly, in *James v. City of Costa Mesa*, 700 F.3d 394, 403 (9th Cir. 2012), the Ninth

Circuit considered whether plaintiffs who relied on medical marijuana to treat serious illnesses

could seek relief under section 12131 of the ADA for a city's actions limiting their access to

medical marijuana dispensaries. The plaintiffs argued that because their marijuana use was state-

authorized and physician-supervised, it fell within the ADA's recognized exception for drugs

taken under the supervision of a physician. Accordingly, they were not excluded from

classification as qualified individuals with a disability who could claim protections under the

ADA on the basis of the city's denial of access to marijuana dispensaries. *Id.* at 398. Although

the court agreed that the plaintiffs' use of medical marijuana was both under the supervision of a physician and authorized under California law, after examining the text and legislative history of the supervised use exception provided by section 12210 [1], as well as the relationship between the ADA and CSA, the *James* court ultimately concluded that "doctor-supervised marijuana use is an illegal use of drugs not covered by the ADA's supervised use exception." *Id.* at 403. Because there was no dispute that the alleged discrimination was on the basis of medical marijuana use, the plaintiffs could not state a cognizable claim under the ADA. *Id.* at 397 n.5.

District courts in other circuits have similarly concluded that the ADA provides no protection against discrimination on the basis of medical marijuana use, even where that use is state-authorized and physician-supervised. *See, e.g., Zarazua v. Ricketts,* 2017 U.S. Dist. LEXIS 161990, at *5 (D. Neb. 2017) (no cognizable claim under the ADA for denial of access to medical marijuana); *Steele v. Stallion Rockies, Ltd.*, 106 F. Supp. 3d 1205, 1212 (D. Colo. 2015) (termination on basis of medical marijuana use did not constitute discrimination for purpose of ADA); *Forest City Residential Mgmt. v. Beasley*, 71 F. Supp. 3d 715, 731 (E.D. Mich. 2014) (medical marijuana user was "not a qualified individual with a disability under section 504 of the Rehabilitation Act because she uses an illegal drug (according to federal law)" and the alleged discrimination was "on the basis of such drug use.").[2]

Courts have additionally rejected the argument that discrimination on the basis of medical marijuana use reflects discrimination on the basis of the disability the medical marijuana is used to treat. In *Bailey v. Real Time Staffing Servs.*, 543 F. App'x 520, 524 (6th Cir. 2013)

---

[1] The definition provided for the term "illegal use of drugs" contained in section 12210 is identical to the definition of "illegal drug use" provided by section 12111 (the section of the ADA applicable to claims of discrimination by employers). *Compare* 42 U.S.C. § 12111(6) *with* § 12210(d).

[2] The Rehabilitation Act relies on the same definition of "qualified individual" and "illegal drug use" with the same language exempting supervised use as does the ADA. *See* 29 U.S.C. § 705.

(unpublished), albeit in an unpublished opinion, the Sixth Circuit rejected a claim for discriminatory discharge brought under the ADA by an employee who was fired for testing positive for marijuana. The plaintiff established that he had been validly prescribed marijuana for HIV and claimed that his marijuana use was protected under the ADA as a "manifestation of a disability." *Id.* The *Bailey* Court held that argument unavailing. "[Plaintiff] was…fired for failing a drug test. The ADA allows employers to perform drug testing." *See also Steele,* 106 F. Supp. 3d 1205 at 1212 ("[e]ven if Plaintiff is attempting to argue that his termination was related to his disability by virtue of the fact that marijuana was what he used to treat his disability…anti-discrimination law does not extend so far as to shield a disabled employee from the implementation of his employer's standard policies against employee misconduct. As such, Plaintiff's termination as a result of his use of medical marijuana does not constitute discrimination.") (internal citations omitted).

I agree with the courts that have reasoned that even physician-supervised medical marijuana use does not fit within the supervised-use exception identified in the ADA. To read the statute otherwise would place it in direct tension with the clear provisions of the CSA—a statute the ADA relies upon to define the term "illegal drug use." *See James*, 700 F.3d at 404 ("[w]e decline to construe an ambiguous provision in the ADA as a tacit qualifier of the clear position expressed in the CSA."). Because medical marijuana does not fit within the supervised-use exception and remains illegal under federal law, an individual who uses medical marijuana cannot state a *prima facie* case under the ADA for discrimination on the basis of medical marijuana use. That remains true even where a plaintiff can establish that the drug use is linked to an underlying disability recognized by the ADA and taken under the supervision of a physician.

Equally clear, however, is that the use of medical marijuana does not waive protections of the ADA wholesale. The specific text of section 12114 provides that a qualified individual does not include an employee engaging in the illegal use of drugs when the covered entity acts *"on the basis of such use*." 42 U.S.C. § 12114 (emphasis added). As the *James* court explained, "[w]e do *not* hold…that medical marijuana users are not protected by the ADA in any circumstance. We hold instead that the ADA does not protect medical marijuana users who claim to face discrimination *on the basis* of their marijuana use." *James*, 700 F.3d at 397 n.3 (emphasis in original); *see also EEOC v. Pines of Clarkston*, 2015 U.S. Dist. LEXIS 55926, at *17 (E.D. Mich. 2015) ("[plaintiff] does not allege that she was discriminated against on the basis of her use of marijuana; rather, she alleges that she was terminated because of her epilepsy; thus, the reasoning of [*James*] is irrelevant to the instant dispute").

Here, Waterbury contends that by virtue of his acknowledged medical marijuana use, Eccleston is precluded from bringing a claim under the ADA. *See* Def.'s Mem. Doc. No. 15-1 at 14; *see also* Trans. of H'rg. Doc. No. 23 at 5 ("we don't believe Mr. Eccleston has the requisite standing at this particular point to show that he's a qualified individual, given the fact that it's undisputed…that he tested positive for marijuana."). Although Waterbury is correct that Eccleston may not claim protections under the ADA against discrimination on the basis of his medical marijuana use (even where that use is linked to an underlying disability), Eccleston is not precluded from claiming protections against discrimination merely by virtue of his medical marijuana use. Rather, Eccleston may still state a cognizable claim for discrimination under the ADA if he can plausibly allege that he was discriminated against in the terms and conditions of employment on the basis of his diagnosis of PTSD, rather than on his medical marijuana use.

     ii.     Termination on the Basis of Disability

To meet the requirements for setting out a *prima facie* case of discriminatory discharge on the basis of PTSD at the pleading stage, Eccleston must set forth allegations that his termination occurred "under circumstances giving rise to an inference of discriminatory intent." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (internal citations omitted). "At the very least, for there to be causation, the employer must have knowledge of the disability." *Kolivas v. Credit Agricole*, 1996 U.S. Dist. LEXIS 17478, at *8 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997); *see also Adams v. Rochester Gen. Hosp.,* 977 F. Supp. 226, 236 (W.D.N.Y. 1997) (collecting cases).

Eccleston relies on the temporal proximity between (1) his positive drug test and presentation of his medical marijuana card to Human Resources in March 2018, and (2) his ultimate discharge in April 2018 to contend that he was terminated on the basis of his PTSD. *See* Compl. at ¶ 27(d). He states that, because Waterbury was aware he had obtained a medical marijuana card, the city "knew or should have known that Eccleston had post-traumatic stress disorder." *Id.* at ¶ 24; *see also* Pl.'s Mem. Doc. No. 20-1 at 7. He additionally points to comments made by O'Leary expressing disdain for first responders with PTSD as evidence of discriminatory intent. *Id.*

Those allegations are insufficient to state a cognizable claim that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of disability. As an initial matter, Eccleston does not allege that Waterbury was aware of his diagnosis of PTSD. He states only that Waterbury should have been aware of his condition because he had obtained a medical marijuana registration certificate and presented that certificate to Human Resources. *See* Compl. at ¶¶ 19, 24. Nowhere does he allege that the card specifically referenced his diagnosis of PTSD or even listed the conditions establishing eligibility for such a registration card. He

additionally does not indicate that he made either Perugini or anyone else aware of the underlying illness that prompted him to obtain the card. *See Adams,* 977 F. Supp. at 235 ("[e]mployers are not required to be clairvoyant as to hidden medical problems"). Rather, he relies on Waterbury's awareness of his medical marijuana registration certificate as a basis for claiming awareness of his disability, and points to the temporal proximity between *that* knowledge and his discharge. Without alleging facts that Waterbury was at any point made aware of his disability, as opposed to his medical marijuana use, Eccleston has failed to set forth facts giving rise to an inference of discrimination.

Similarly, although he cites to discriminatory remarks made by O'Leary, he alleges only that O'Leary was aware of his medical marijuana registration certificate, not his underlying diagnosis of PTSD. He additionally does not state that O'Leary's discriminatory remarks were in any way related to the decision to terminate his employment. *See Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 149 (2d Cir. 2010) (to determine whether a remark is probative of discriminatory intent, a court must consider, among other things, "when the remark was made in relation to the employment decision at issue" and "the context in which the remark was made (i.e., whether it was related to the decision-making process"). Allegations that O'Leary made discriminatory remarks on one occasion more than a year before Eccleston's discharge and had knowledge only that Eccleston possessed a registration certificate are insufficient to raise an inference of discrimination.

Moreover, when asked specifically which parts of the complaint support the argument that Eccleston was terminated on the basis of his PTSD diagnosis rather than on the basis of his medical marijuana use, counsel for Eccleston stated that the two issues were interrelated because "[Eccleston] wouldn't have had the marijuana had he not had PTSD." *See* Trans. of H'rg. Doc.

No. 23 at 31. That argument appears to suggest that because Eccleston relied on the medical marijuana for his disability, termination on the basis of that use reflects discrimination on the basis of the underlying disability. The ADA, however, makes no exception for illegal drug use caused by an underlying disability, and instead explicitly provides that an employer may drug test employees and terminate employment on the basis of illegal drug use without violating the ADA. 42 U.S.C. § 12114; *see also Bailey,* 543 F. App'x at 524.

By alleging only that Waterbury and O'Leary were aware of his medical marijuana registration card prior to his discharge and terminated him on that basis, Eccleston has failed to meet even the minimal burden required at this stage of the pleadings to plausibly allege a claim of discriminatory discharge under the ADA.

iii.     Pretext

Moreover, even if Eccleston had met his burden in establishing a *prima facie* case of discriminatory discharge, Waterbury has offered a legitimate, non-discriminatory reason for the termination by citing to the provisions of the LCA, which specifies "Thomas F. Eccleston may be subject to immediate termination…if Thomas Eccleston tests positive for a…controlled substance." *See* Def.'s Ex. A, Doc. No. 15-2. Discharge on the basis of a positive drug screen, especially in light of the specific provisions of that LCA, clearly constitutes a non-discriminatory reason for adverse employment action. *See Fahey v. New York*, 2012 U.S. Dist. LEXIS 15104, at *27 (E.D.N.Y. Feb. 7, 2012) ("courts consistently conclude that an employee's failure of a drug test constitutes a legitimate nondiscriminatory reason for terminating the employee") (collecting cases); *see also Klaper v. Cypress Hills Cemetery*, 2014 U.S. Dist. LEXIS 46470, at *22 (E.D.N.Y. Mar. 31, 2014) ("[p]laintiff's violation of the last chance stipulation constituted a legitimate, nondiscriminatory justification for [defendant's] decision to terminate his

employment.") (collecting cases for proposition that violation of an LCA constitutes a non-discriminatory reason for discharge).

Eccleston contends that the proffered reason is pretextual because he was not under the influence of drugs or alcohol at work, was permitted to use medical marijuana under state law, and was discharged soon after providing Waterbury with his medical marijuana card. *See* Pl.'s Mem. Doc. No. 20-1 at 7. He additionally relies on O'Leary's statements expressing disdain for first responders to claim that the discharge was pretextual for discrimination on the basis of PTSD. *Id.* As discussed above, allegations that he was discharged soon after providing Waterbury with his registration certificate do not raise an inference of discrimination, much less satisfy Eccleston's burden of demonstrating pretext.  Similarly, allegations of stray remarks by O'Leary entirely unrelated to the decision-making process are insufficient to establish that the proffered reason for termination was pretext for discrimination.

### 2.  Failure to Accommodate

To establish a *prima facie* case of discrimination based on an employee's failure to accommodate the mental or physical limitations of an otherwise qualified individual with a disability, a plaintiff must establish that (1) the plaintiff is a person with a disability within the meaning of the ADA; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations. *Natofsky,* 921 F.3d at 352 (analyzing requirements of *prima facie* case under Rehabilitation Act but noting that same requirements apply to failure to accommodate under the ADA). "Where the employee's disability is known to the employer, the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be

reasonably accommodated." *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 231 (2d Cir. 2017) (internal citations omitted). An employee may not recover based on a failure to engage in that process "if he cannot show that a reasonable accommodation existed at the time of his dismissal." *Id.* (internal citations omitted).

If a plaintiff successfully establishes a *prima facie* case of failure to accommodate, the burden shifts to a defendant employer to establish that the proposed accommodation would cause undue hardship. *Stone v. Mount Vernon*, 118 F.3d 92, 98 (2d Cir. 1997).

Eccleston contends that Waterbury failed to accommodate his disability by "not permitting him a reasonable accommodation for alcohol and drug screens due to his PTSD," by "permitting a positive result on a random drug screen when in fact he had a prescription" and by failing to "engage in an interactive process to seek to accommodate" his disability. *Id.* at ¶¶ 24-26, 27(d). Waterbury moves for dismissal of that claim, arguing that because marijuana is illegal under federal law, failure to accommodate medical marijuana use cannot establish liability under the ADA.

Courts that have considered ADA claims for failure to accommodate medical marijuana use have relied on the CSA's classification of marijuana as a Schedule I illegal substance to conclude that "using marijuana is not a reasonable accommodation." *Kamakeeaina v. Armstrong Produce, Ltd.*, 2019 U.S. Dist. LEXIS 50863, at *15 (D. Haw. 2019); *see also Assenberg v. Anacortes Hous. Auth.*, 268 F. App'x 643, 644 (9th Cir. 2008) (unpublished) (because the ADA expressly excludes illegal drug use from scope of coverage, housing authority did not have a duty to accommodate resident's use of medical marijuana); *Zarazua*, 2017 U.S. Dist. LEXIS 161990 at *5 ("it simply is not possible to conclude that creating an exception for medical marijuana…would be a reasonable accommodation under the ADA"); *Garcia v. Tractor Supply*

*Co.*, 154 F. Supp. 3d 1225, 1230 (D.N.M. 2016) (considering failure to accommodate claim under state law and noting "the fact that the state may exempt medical marijuana users from the reach of the state criminal law does not mean that the state can affirmatively require employers to accommodate what federal law specifically prohibits") (quoting *Washburn v. Columbia Forest Products, Inc.*, 340 Ore. 469, 134 P.3d 161, 167-68 (Or. 2006)).

Although the Second Circuit has not directly addressed a claim of failure to accommodate medical marijuana use under the ADA, I find persuasive the reasoning of courts that have held that the ADA cannot be read to affirmatively require an employer to accommodate the use of a substance deemed illegal under federal law. Accordingly, allegations that Waterbury refused to permit Eccleston to test positive for marijuana on a drug test do not state a cognizable claim of failure to accommodate under the ADA. *See McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 100 (2d Cir. 2009) (the ADA does not impose liability unless a plaintiff can demonstrate that a reasonable accommodation exists).

Eccleston has similarly failed to establish a *prima facie* case for failure to accommodate by alleging that Waterbury failed to initiate an interactive process to accommodate his disability. Although he contends that his conversation with Chief Perugini about obtaining a medical marijuana card was a request for an accommodation, Eccleston nowhere states that he shared with Chief Perugini (or anyone else in the Fire Department) that he had been diagnosed with PTSD. Merely suggesting that he might get a medical marijuana card is insufficient to establish that Waterbury was aware of his need for an accommodation and failed to initiate an interactive process. *See, e.g., Mendillo v. Prudential Ins. Co. of Am.,* 156 F. Supp. 3d 317, 342 (D. Conn. Jan. 12, 2016) ("[a]n employer has no duty to provide an accommodation for a disability of which it has no knowledge") (quoting *Worthington v. City of New Haven*, 1999 U.S. Dist. LEXIS

16104, at *38-40 (D. Conn. Oct. 5, 1999)). Accordingly, Eccleston has failed to state a cognizable claim for failure to accommodate his disability in violation of the ADA.

### 3. Retaliation[3]

To establish a *prima facie* case of retaliation in violation of the ADA, a plaintiff must offer evidence that "(1) that he engaged in protected participation or opposition under the ADA, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Palmieri v. Hartford*, 947 F. Supp. 2d 187, 206 (D. Conn. 2013) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)). Courts in this circuit have held that a request for an accommodation for a disability may constitute a protected activity. *See Warmin v. New York City Dep't of Educ.*, 2019 U.S. Dist. LEXIS 125774, at *22 (S.D.N.Y. 2019); *Valenti v. SleepMed, Inc.*, 2017 U.S. Dist. LEXIS 105615, at *35-36 (D. Conn. 2017).

"Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Treglia v. Manlius*, 313 F.3d 713, 721 (2d Cir. 2002) (internal citations omitted).

Eccleston alleges that he engaged in protected activity by "seeking an accommodation even when his employer had refused it. He inquired of his employer in 2017 about getting a

---

[3] I note that it is not clear from the complaint whether Eccleston asserts a claim for retaliation against Waterbury under both the ADA and Connecticut law, or merely under Connecticut law. At the hearing, counsel for Eccleston clarified that the retaliation claim was brought under both state law and the ADA.

medical marijuana card or Connecticut Registration Certificate…his employer simply told him it would 'not be a good idea'. [] Eccleston secured a Connecticut Registration Certificate despite this discriminatory employment practice by his employer. He was then fired for this very 'opposing conduct'."). Pl.'s Mem. Doc. No. 20-1 at 12; *see also* Compl. at ¶ 32.

It is not clear from the complaint whether Eccleston brings claims against O'Leary in both his official and individual capacity or only his official capacity. Accordingly, Waterbury moves for dismissal of this claim on two separate grounds, arguing first that the ADA does not provide for individual liability for retaliation, and second that any claim against O'Leary in his official capacity is duplicative of the claim against Waterbury. Waterbury additionally moves for dismissal on the grounds that Eccleston has failed to plausibly allege that he engaged in protected activity.

i.      Retaliation Claim—O'Leary

It is settled law in the Second Circuit that "the retaliation provision of the ADA…cannot provide for individual liability." *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). Accordingly, to the extent that Eccleston alleges retaliation by O'Leary in his individual capacity under the ADA, that claim is dismissed. Additionally, where a plaintiff brings an official capacity claim under the ADA against an individual agent of an entity and separately brings a claim against the entity, the claim against the individual must be dismissed as duplicative. *See, e.g., Villanti v. Cold Spring Harbor Cent. Sch. Dist.,* 733 F. Supp. 2d 371, 384 (E.D.N.Y. 2010) (dismissing official capacity claims against individual defendants as duplicative of claim against employer). The official capacity claim against O'Leary is therefore dismissed as duplicative of the claim against Waterbury.

ii.     Retaliation Claim—Waterbury

Although a request for an accommodation may constitute "protected activity" under the ADA, any such request must be "reasonable". *See Weixel v. Bd. of Educ. of New York,* 287 F.3d 138, 149 (2d Cir. 2002). As discussed above, the only accommodation that Eccleston alleges that he sought is a medical marijuana registration card. He does not allege that he informed Perugini (or anyone else) that he had PTSD and sought accommodations for that disability. Because he has alleged only that he raised the possibility of obtaining a medical marijuana card, he has failed to establish that he engaged in protected activity for purposes of the ADA. *See, e.g., Lambdin v. Marriott Resorts Hosp. Corp.*, 2017 U.S. Dist. LEXIS 149570, at *24 (D. Haw. 2017) ("the ADA provides no protection from retaliation for an employee who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use"). Accordingly, he has not met his burden in stating a *prima facie* case of retaliation.

Although Eccleston relies on three separate theories of liability under the ADA, he has failed to establish a valid claim of discrimination on the basis of disability under any of those frameworks. Instead, under each theory of liability, Eccleston plausibly alleges only that he suffered an adverse employment action on the basis of medical marijuana use. Because the ADA cannot be understood to afford protections against discrimination on the basis of medical marijuana use, his claim under the ADA is **dismissed** with prejudice.

### B. State-Law Claims

Eccleston additionally alleges that Waterbury violated various provisions of Connecticut law by terminating him on the basis of his medical marijuana use. It is well settled that the "exercise of supplemental jurisdiction is within the sound discretion of the district court." *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). Before exercising supplemental

jurisdiction over state-law claims in a particular case, a court should consider "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ.*, 484 U.S. at 350. When "all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination." *Lundy*, 711 F.3d at 118 (quoting *Carnegie Mellon Univ.*, 484 U.S. at 350 n.7).

Here, because all of the federal claims have been dismissed at an early stage of the action, I decline to exercise supplemental jurisdiction over the remaining state law claims. *See Klein & Co. Futures*, *Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) (when "the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."). Those claims are **dismissed without prejudice** to refiling in state court.

## IV.    Conclusion

The current split between state and federal law with regard to the legality of medical marijuana has placed individuals like Eccleston, who rely on medical marijuana to treat various illnesses, in a difficult position. Although I am sympathetic to the challenges and complexities of navigating the tension between those two statutory schemes, especially in the context of a relationship with an employer, medical marijuana is illegal under federal law and federal law therefore does not provide protection against employer discrimination for the use of medical marijuana, even where that use is expressly linked to an underlying disability. Because Eccleston has failed to plausibly allege discrimination on the basis of PTSD rather than on the basis of his medical marijuana use, he has failed to state a cognizable claim under the ADA. The motion to dismiss [doc. no. 15] is therefore **granted** with respect to claims under the ADA. The state-law

claims are **dismissed without prejudice** to refiling in state court. The clerk is directed to enter judgment in favor of the defendants and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 22nd day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge